IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Tommy Algathen Allen,           )<br>                                 )<br>              Plaintiff,         )<br>                                 )<br>     vs.                         )<br>                                 )<br>BMW Manufacturing/TSI,           )<br>                                 )<br>              Defendant.         )<br>_____) | Civil Action No. 7:04-0052-HMH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In his complaint, the plaintiff alleges a cause of action for violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, against the defendant BMW Manufacturing ("BMW"), his former employer.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to

judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).  Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **FACTS PRESENTED**

In his verified *pro se* complaint,[1] the plaintiff alleges:

1. BMW Manufacturing regarded my carpal tunnel syndrome as a disability and on a day I was to return to work BMW deactivated my plant pass and would not allow me to work. BMW received advice from their physician (Dr. Zimmerman, neurologist) that my condition hadn't worsen since my pre-employment physical that I had to undergo twice before I was put on BMW's payroll.  Yet BMW insisted that I could not return to work and recommended that I find other employment, despite the fact that I received no complaints by my supervisor that my condition was preventing me from performing essential functions of the job.

2. BMW after sending me to Dr. Zimmerman allowed me to return to work.  However a white male named Jim who was also sent to Dr. Zimmerman for hand and wrist pain was given different treatment.  He was not prohibited from returning to work though he had a production position as well.  Nor was he placed under the stress of an uncertain future that I experienced when BMW told me to find a new job outside of employment with BMW.  That I would not come back to BMW with[out] getting fully released from the restriction their doctor Dr. Zimmerman.

(Comp. at 3-4).

The plaintiff applied for a position with BMW in 1999 or 2000 (Allen dep. 41). In January 2001, he received a conditional offer of employment and underwent a physical examination by Dr. Sam Zimmerman (Allen dep. 34; ex. C, def. memo).  Dr. Zimmerman examined the plaintiff's wrists and hands and obtained a medical history from the plaintiff.

---

[1] The plaintiff has since retained counsel and is no longer proceeding *pro se*.  However, no amended complaint was filed.

3

In his medical report, Dr. Zimmerman noted that the plaintiff reported no history of symptoms of weakness, numbness or tingling, and no family history of weakness, tingling or numbness. Dr. Zimmerman diagnosed the plaintiff as having a "very mild neuropathy pattern," but stated that it was not carpal tunnel entrapment or latent carpal tunnel syndrome. Dr. Zimmerman imposed no restrictions on the plaintiff's hand and wrist movement (see ex. C; Allen dep. at 35). The plaintiff therefore entered the pool of persons available to be hired as production associates at BMW.

On January 27, 2003, the plaintiff was hired by BMW as a production associate in the assembly department (Allen dep at 43). On February 6, 2003, the plaintiff filed an incident report with BMW, complaining of a burning sensation in his right wrist (Allen dep. at 76-78; ex. D). Dr. Hommel, the BMW plant physician, examined the plaintiff and determined that he could work with no restrictions.

On February 28, 2003, the plaintiff was examined by Dr. Zimmerman, the same physician who had examined the plaintiff two years earlier for his pre-placement physical (Allen dep. at 88). Dr. Zimmerman noted this prior history in his report:

> Mr. Allen is a patient on whom we performed nerve conductions in December 2000. I saw the patient for functional evaluation in January of 2001. My notes at that time indicated that I thought the patient had a very mild abnormality in both median and ulnar nerves which I interpreted as being compatible with something other than carpal tunnel syndrome and I did not restrict him from assembly work.

(Ex. E). Dr. Zimmerman also noted that "there [was] no worsening [of plaintiff's nerves] and in fact the numbers actually look slightly better than they did before." He went on to conclude, however: "Unfortunately, this patient raises the possibility of a carpal tunnel like syndrome in his complaint. I therefore feel that we must alter the recommendation and generally restrict him as we would in a patient in whom we have clear cut evidence of entrapment syndrome." Thus, based upon the plaintiff's complaints, Dr. Zimmerman

4

restricted the plaintiff's hand/finger movements (grasping, pinching, finger dexterity, handling/ manipulation, and thumb pushing), as well as wrist/arm/elbow movements (sideways wrist motion, rotation from palm up to palm down). Based on these restrictions, there was no job at BMW which the plaintiff could perform (Allen dep. at 95; affidavit of Jerry DeYoung ¶ 5).

On March 5, 2003, the plaintiff met with Dr. Hommel to discuss Dr. Zimmerman's report (Allen dep. at 95). Following this meeting, the plaintiff applied for and received short term disability benefits from BMW (Allen dep. at 98).

On April 10, 2003, the plaintiff was examined by his personal physician, Dr. Mark Lenke. Dr. Lenke conducted an electrophysiological study of the plaintiff's right upper extremity. He concluded that "there is no median neuropathy at the right wrist" (ex. F). The plaintiff testified that Dr. Lenke told him that the results were normal (Allen. dep. at 110).

On May 5, 2003, in light of the two opinions of Dr. Zimmerman and Dr. Lenke, Dr. Hommel referred the plaintiff to Dr. John P. Evans for a third opinion. Dr. Evans concluded that the plaintiff was fit for work but recommended that he be restricted in wrist flexion to "20 degrees of extension, 20 degrees of flexion occasionally, and limit his gripping to a 3 point grip to power grip occasionally" (ex. G). Dr. Evans noted that the plaintiff "has had these same complaints in his right hand after now being out of work for two months, which is longer than he had worked at BMW."

The affidavit of Jerry DeYoung, an Assistant Manager, Industrial Health Services at BMW, indicates that based upon the restrictions placed on the plaintiff by Dr. Evans, BMW had no Production Associate position that could accommodate the plaintiff's restrictions (ex. B).

## ANALYSIS

The ADA prohibits an employer with 25 or more employees from discriminating "against a qualified individual with a disability because of the disability . . . ." 42 U.S.C. §12112(a).  The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  *Id.* §12111(8).  The statute defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  *Id.* §12102(2). "Substantially limits" means, *inter alia*, "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. §1630.2(j)(1)(ii). Examples of "major life activities" are "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  *Id*. §1630.2(I).

In his complaint, the plaintiff alleges that the defendant discriminated against him because the defendant perceived the plaintiff to be disabled.  The plaintiff alleges that BMW wrongfully terminated him from his position as a production associate because he was "regarded as" having a disability.

Individuals who are "regarded as" having a disability are disabled within the meaning of the ADA.  *See* 42 U.S.C. §12102(2)(C).  Subsection (C) provides that having a disability includes being "regarded as" having "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  *See* 42 U.S.C. §12102(2)(A). One may be "regarded as" disabled under the ADA if either "(1) a covered entity mistakenly believes that [one] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual,

6

nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *Murphy v. United Parcel Serv.*, 527 U.S. 516, 521-22 (1999); *see also Haulbrook v. Michelin North America, Inc.*, 252 F.3d 696, 702 (4th Cir. 2001). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(1).

In this case, it is unclear in what major life activities the plaintiff contends that the defendant regarded him as being disabled, though it can be presumed that his main assertion is that he was perceived by BMW as being substantially limited in the major life activity of working. In his memorandum, the plaintiff simply states: "It was perceived by Defendant that Plaintiff had carpal tunnel syndrome" (pl. memo at 2).

In order for the plaintiff to demonstrate that BMW regarded him as disabled, he must show that BMW "entertained a misperception about [his] condition." *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 471 (4th Cir.), *cert. denied*, 537 U.S. 827 (2002). In other words, the plaintiff must show that BMW mistakenly believed him to have either a substantially limiting impairment that he did not have, or that BMW believed him to have a substantially limiting impairment when in fact his impairment was non-limiting. *Id*; *see also Sutton*, 527 U.S. at 489. The plaintiff has failed to present evidence to show that BMW regarded him as having any impairment that substantially limits one or more major life activities. The plaintiff himself indicates that BMW did not view him as incapable of working due to his carpal tunnel; in his complaint he alleges that BMW told him "to find a new job outside of employment with BMW."

An employer's perception that an employee may not be able to work at its facility due to a restriction is insufficient as a matter of law to prove that the employer thought the employee was substantially limited in the major life activity of working. *Haulbrook*, 252 F.3d at 703; *see also Rohan v. Networks Presentations LLC*, 375 F.3d 266,

7

277 (4th Cir. 2002) ("That [the employer] regarded [the plaintiff] as unable to perform 'the specific role for which she was hired' is, standing alone, insufficient to establish a disability under subsection (2)(C).", *quoting Sutton*, 527 U.S. at 492). The plaintiff cannot meet his burden.

BMW was aware that Dr. Evans and Dr. Zimmerman had issued restrictions on the plaintiff's ability to move and use his hands and wrists and, thus, the defendant was aware of the plaintiff's physical impairment. Accordingly, only the second scenario of *Sutton* comes into play, *i.e.*, whether or not the defendant "mistakenly believe[d] that an actual, nonlimiting impairment substantially limit[s] one or more life activities" of the plaintiff. *Sutton*, 527 U.S. at 489. As set forth above, the plaintiff has not met his burden on this issue.

Based upon the foregoing, the plaintiff cannot show that he was "regarded as" disabled. Accordingly, summary judgment should be granted.[2]

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

April 25, 2005

Greenville, South Carolina

---

[2] tThe plaintiff argues that he has stated a claim under the South Carolina Human Affairs Law (pl. memo at 3). However, because there is no genuine issue of material fact as to the ADA claim, summary judgment is also appropriate on the state law claim. *See Smith v. Prudential Financial Services, Inc.*, 739 F.Supp. 1042 (D.S.C. 1990)(holding that if a plaintiff cannot maintain a Title VII claim, he cannot maintain a claim under the South Carolina Human Affairs Law).